UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

NORTHERN ARKANSAS TELEPHONE
COMPANY, INC.                                                   PLAINTIFF

    vs.                  Case No. 05-3044

CINGULAR WIRELESS, LLC; CINGULAR
WIRELESS, as Successor to AT&T
Wireless, Inc.; SOUTHWESTERN BELL,
LLC; JOHN DOE #1 CINGULAR WIRELESS
ENTITY/AFFILIATED; JOHN DOE #2 AT&T
WIRELESS ENTITY/AFFILIATED; JOHN DOE #3
SBC WIRELESS ENTITY/AFFILIATED; and
JOHN DOE #4                                                     DEFENDANTS

## **O R D E R**

On this 31st day of August, 2006, comes on to be considered **Defendants' Motion to Dismiss (Doc. 4)**. The Court, being well and sufficiently advised, finds that the motion should be **GRANTED**. The Court finds and orders as follows with respect thereto:

1. The Court's review of the pleadings and the other submissions by the parties reveals the following:

   \* Plaintiff is an Arkansas telecommunications provider that owns telephone lines and facilities that provide switched access services.

   \* Plaintiff instituted this action in state court against defendants, various wireless service providers, alleging that defendants had used plaintiff's services and facilities to terminate calls but had refused to pay plaintiff a reasonable fee for the use of its services and facilities.

* Plaintiff seeks to recover for the use of its facilities "prior to April 29, 2005," under "its tariff provisions or the doctrines of Quantum Meruit, Quantum valebant, or conversion ...." (Compl. ¶ ¶ 12, 13.)

* Defendants removed the action to this Court on the basis of diversity jurisdiction and now move to dismiss plaintiff's complaint.

* Defendants argue that the Telecommunications Act of 1996, 47 U.S.C. § 251, *et. seq.* (the "TCA"), provides the exclusive procedure by which plaintiff must pursue its claims prior to filing suit and that the Court should therefore dismiss the action without prejudice to allow the parties to proceed under the TCA.

2. Defendants insist that their motion to dismiss is good and should be granted. In support thereof, they argue:

* that when a call is delivered between customers of different telecommunications carriers, the Federal Communications Commission (FCC) requires the originating carrier to compensate the terminating carrier -- and that this obligation is reciprocal. In other words, they argue, defendants have an obligation to compensate plaintiff for defendants' calls terminated on plaintiff's network -- and plaintiff has the same obligation to compensate defendants for plaintiff's calls terminated on defendants' network. *See In the Matter of Developing a Unified Intercarrier Compensation Regime*, 20 F.C.C.R. 4855, ¶ 2 (2005).

\* that, under the TCA, issues of intercarrier compensation are required to be negotiated between the parties. Specifically, the parties are required to engage in good faith negotiations regarding the terms and conditions of an interconnection agreement. *See* 47 U.S.C. § 252(b)(5).

\* that, if negotiations fail, either party may petition the state public service commission for arbitration. *See* 47 U.S.C. § 252(b)(1).

\* that all interconnection agreements, whether adopted by mutual negotiation or arbitration, are subject to review by the state commission. *See* 47 U.S.C. § 252(e)(4).

\* that, when a state commission makes a determination, any party "aggrieved" by such determination may file suit in federal court. *See* 47 U.S.C. § 252(e)(6).

\* that, on March 16, 2004, a representative of plaintiff contacted a representative of defendants to begin interconnection negotiations under the Act;

\* that, as part of the initial negotiations, plaintiff forwarded a proposed interconnection agreement for defendants' review and also raised the issue of intercarrier compensation allegedly owed by defendants for plaintiff's termination of defendants' traffic;

\* that interconnection negotiations generally involve complex legal and technical issues, and it is not unusual for such

negotiations to take many months, even longer than a year to produce a completed agreement; and

\* that, on June 29, 2005, without attempting to complete negotiations or seek arbitration by the state Commission, plaintiff filed its Complaint in Arkansas state court.

3. In response of its contention that the motion is not good and should be denied, plaintiffs argue:

\* that it "tried to negotiate with Defendants .. about resolving this matter, as would be done pursuant to the Act, with no response from Defendants;" and

\* that, months later, a representative of defendants informed plaintiff that defendants were "not going to negotiate [and] [t]his left Plaintiff in the position of having to file this litigation."

4. Under the TCA, before a federal court can become involved, the state public service commissions are tasked with mediating and arbitrating between telecommunication companies when their private negotiations fail to reach an interconnection agreement. *See Contact Communications v. Quest Corp.*, 246 F. Supp.2d 1184, 1188 (D. Wy. 2003). While plaintiff characterizes its claims as arising under state law, those claims appear to be based on defendants' alleged failure to pay plaintiff for terminating defendants' traffic. The obligation of the parties regarding intercarrier compensation is governed by the TCA. It

follows, therefore, that plaintiff cannot properly bypass the TCA's negotiation and arbitration requirements.

The Court concludes, therefore, that it lacks jurisdiction over plaintiff's claims, as plaintiff failed to petition the Arkansas Public Service Commission for arbitration of the parties' failed negotiations. *See id.* at 1189-90 (federal courts lack jurisdiction over interconnection agreement disputes that have not been first presented to state utility regulatory commission and parties cannot avoid this requirement by characterizing claim as arising under state law); *Z-Tel Communications, Inc. v. SBC Communications, Inc.,* 331 F. Supp.2d 513, 549-50 (E.D. Tex. 2004) (same).

5. Plaintiff argues that the TCA's negotiation and arbitration requirements do not apply, relying on the FCC's ruling in *In the Matter of Developing a Unified Intercarrier Compensation Regime*, 20 F.C.C.R. 4855 (2005).

In this ruling, the FCC held that a carrier such as plaintiff could, without invoking the TCA's negotiation and arbitration procedures, enforce "wireless termination tariffs" for traffic terminated prior to February 17, 2005, the effective date of its ruling. Plaintiff argues that it may, therefore, recover on its state-law claims for compensation for the termination of calls prior to the effective date of the FCC ruling.

Plaintiff's argument is not persuasive. Defendants point out that plaintiff has not filed a wireless termination tariff in Arkansas. The Court believes that, in the absence of such an applicable tariff, the FCC ruling does not provide plaintiff with any right to recover intercarrier compensation other than through the negotiation and arbitration procedures set out in the TCA.

6. Based on the foregoing, **Defendants' Motion to Dismiss (Doc. 4)** is **GRANTED**. Plaintiff's complaint is hereby **DISMISSED WITHOUT PREJUDICE** so that the parties can proceed under the TCA.

**Plaintiff's Request for Oral Hearing (Doc. 14)** is DENIED.

IT IS SO ORDERED.

/S/JIMM LARRY HENDREN
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE